SAVOIE, Judge.
Defendants, William B. Johnson[1] and David Zachary Combs, appeal their respective convictions of the unauthorized use of movables having a value in excess of $1,000.00, said conduct in violation of LSA-R.S. 14:68.
In mid-April, 1984, Dr. Lynn F. Buhr, an Arkansas horse breeder, was contacted by defendant-Johnson to consider whether he would utilize a sales agent to sell some of his horses. He related to Dr. Buhr that he was in the business of raising Arabian horses and that he knew of other individuals who would be interested in purchasing some from Dr. Buhr. Defendant-Johnson recommended defendant, David Zachary Combs, as said agent, vouching for his credibility, reputation and legitimacy. Thereafter on May 7, 1984, Dr. Buhr received a call from someone representing himself as Zachary Combs, inquiring whether Dr. Buhr had horses for sale. Combs represented that his client, a group of doctors who had formed a partnership named Arabian Horse Partnership Number 3, were interested and had authorized him to purchase horses for the partnership.
On the following day, prior to Combs’ arrival at Dr. Buhr’s ranch, defendant-Johnson arrived to view suitable horses. Defendant-Johnson singled out one horse, Four-L Karmaleta, which he wished to purchase for himself. Subsequently, an oral agreement was reached for the sale thereof. Dr. Buhr sold Four-L Karmaleta, a foal at her side, and an unborn foal she was carrying for the price of $12,000.00. Payment was to be made by a $2,000.00 downpayment with the remaining $10,-000.00 due within one year. However, the downpayment was not made at that time. Such agreement was to be reduced to writing later.
When defendant-Combs arrived At Dr. Buhr’s ranch, Dr. Buhr showed Combs his horses and discussions for purchase ensued with defendant-Combs agreeing to purchase five horses. In said discussions, Dr. Buhr was informed that Combs’ commission for negotiating the sale was to be paid in advance of the sale and agreement between the parties. Pursuant thereto, Dr. Buhr paid Combs $6,000.00 as the initial partial payment of a total sales commission of $12,500.00.
On May 19, 1984, Dr. Buhr and defendant-Johnson executed a written sales agreement calling for the $2,000.00 downpayment to be made on June 18, 1984, with the remaining $10,000.00 due on July 18, 1984. Subsequently, defendant-Johnson notified Dr. Buhr that Combs had died in early June and that he, defendant-Johnson, had been unable to contact any of the partners with respect to Combs’ proposed purchase. One month later, Johnson contacted Dr. Buhr reiterating his inability to contact anyone in the partnership and tendered $1,000.00 in cash in downpayment on Four-L Karmaleta and her foals. Further, defendant-Johnson offered to purchase the five horses which Combs had contracted to purchase and tendered a $10,000.00 check as downpayment thereon. Dr. Buhr was informed that he could cash the check anytime he was ready to enter into the proposed agreement.
In early June, 1984, the victim, Darlene P. Beckwith, was hired by defendant-Johnson to assist him in managing and caring for certain horses on the Double H Ranch *619 in Geismer, Louisiana. Defendant-Johnson had previously negotiated with the ranch’s owner, H.B. Hughes, to manage and raise Arabian horses for their mutual profit. Hughes introduced defendant-Johnson to Ms. Beckwith as “Doc” Johnson, a plastic surgeon.
On June 22, 1984, defendant-Johnson wired $6,000.00 to Dr. Buhr’s account, $1,000.00 to be applied to the downpayment of Four-L Karmaleta and the remaining $5,000.00 applied to the agreement pertaining to the other five horses. Thereafter, on July 11, 1984, defendant-Johnson presented Dr. Buhr with an assignment agreement for the purchase of his contract with Arabian Horse Partnership Number 3 as to the sale of the five horses. Concurrently, he tendered Dr. Buhr another $5,000.00 check. During the course of these negotiations, defendant-Johnson asked Dr. Buhr whether he and his family would accompany him on a vacation to the Cayman Islands. Dr. Buhr accepted.
A few days later, defendant-Johnson approached Beckwith concerning the purchase of an Arabian mare owned by a third-party. Beckwith appeared interested and agreed to purchase same. Subsequently, defendant-Johnson informed Beckwith that the third-party no longer wished to sell the horse but would lease it. She was also informed that the mare was pregnant and due to foal in February, 1985. Under the proposed agreement, Beckwith would pay defendant-Johnson $6,000.00 to lease the mare for two years, during which term she would acquire a one-half ownership of two foals from the horse. Johnson estimated their value might be $150,000.00 each due to their pedigree. That same day, Beck-with met with defendant-Johnson at the Western Union office in Baton Rouge and delivered to him a cashier’s check for the $6,000.00. At such meeting, Beckwith was introduced to defendant-Combs under the name of David Zachary. Defendants then made out two money orders, the first payable to Mr. or Mrs. Buhr in the amount of $4,500.00, the second to David Comb for $1,000.00. Upon seeing the money order made to the Buhrs, Beckwith first learned from whom the mare was being obtained. Defendant-Johnson informed Beckwith that Combs was a part owner of the mare and had to have $1,000.00.
Prior to Buhr’s and defendant-Johnson’s departure to the Cayman Islands, Dr. Buhr was notified by defendant-Johnson that he would be unable to go but that the necessary funds for the trip would be wired to the Western Union office in Memphis for Dr. Buhr. Said sum was in the amount of $4,500.00. The Buhrs subsequently changed their trip to visit the Virgin Islands but did receive the $4,500.00 wired to him by defendant-Johnson. Upon his return from vacation, Dr. Buhr learned that the $5,000.00 check given to him by defendant-Johnson on July 11, 1984, had been dishonored. Upon contacting defendant-Johnson, Dr. Buhr was told that Mr. Hughes was to have deposited those funds in defendant-Johnson’s bank account but had not. A promise was made that funds to cover the check would be forthcoming but never were. Further, when Dr. Buhr deposited the $10,000.00 check given him by defendant-Johnson on June 20, 1984, for collection, it was also dishonored.
The events concerning Beckwith’s giving of $6,000.00 to defendant-Johnson, and his concurrent payment to Combs made Beck-with apprehensive about the agreement. As a result she questioned defendant-Johnson daily in regard to the mare’s arrival or the return of her money. Approximately one week after she entered into the agreement with defendant-Johnson, he told her he had decided to return her $6,000.00 and that she could retain her one-half interest in the two foals. He then gave Beckwith his check dated July 19, 1984, for the sum of $6,984.00. Said check included Beck-with’s salary, miscellaneous expenses, and repayment of the $6,000.00 together with $350.00 she had loaned him. When presented for payment, the check was dishonored. Upon confronting defendant-Johnson with the dishonorment of his check, Beckwith was told that money was being transferred from the Cayman Islands to Florida and then to his bank in Arkansas *620 for payment to her. Although he continually promised payment, Beckwith failed to receive same.
On August 8, 1984, Beckwith picked up defendant-Johnson at Ryan airport in Baton Rouge and drove him back to the Double H Ranch. On the way thereto, she presented him with an agreement drafted by her mother pertaining to the lease of the horse. Defendant-Johnson refused to sign same. Although he had informed her earlier that day that he would have her $6,000.00 for her, he failed to produce the money. The next day, defendant-Johnson was arrested and charged with theft in the amount of $6,000.00, a violation of LSA-R.S. 14:67. Sometime after defendant-Johnson’s arrest, Dave Combs, subsequently identified as David Zachary Combs, was arrested and charged with theft in the amount of $6,000.00 in violation of LSA-R.S. 14:67.
The trial court found that defendants had misappropriated or taken $6,000.00 belonging to Beckwith through fraudulent conduct, practices, and representations. However, it found that the state had failed to prove the requisite intent to permanently deprive Beckwith of her property. Finding a magnitude of intrigue, subterfuges, and misrepresentations to Beckwith through fraudulent practices, conduct, and representations, the court held that defendants had deprived Beckwith of her funds at least temporarily. Based thereon, the trial court found defendants guilty of the unauthorized use of movables having a value in excess of $1,000.00 in violation of LSA-R.S. 14:68.
Defendants appeal, contending that the trial court erred in:
1. Failing to find that defendants had been denied their constitutional rights to a speedy trial.
2. Failing to grant defendants’ motion to quash based on the state’s untimely prosecutions.
3. Failing to grant defendants’ motion to quash based on the state’s untimely trial in this matter.
4. Finding that the state had met its burden of proof as to defendants’ guilt.
5. Erroneously admitting inadmissible hearsay testimony into evidence.
6. Failing to sustain defendants’ motion for directed verdicts, and
7. Allowing into evidence testimony of alleged prior acts of the accuseds in violation of State v. Moore, and State v. Prieur without prior notice or foundation.
ASSIGNMENTS OF ERROR NOS. 1, 2 and 3
In essence, defendants first contend the trial court erred in failing to quash the bills of information under both constitutional and statutory mandates. A defendant’s right to a speedy trial is a fundamental right guaranteed by both our federal (U.S. Const, art. VI) and state constitutions (LSA-Const. Art. 1, § 16). This right attaches when the defendant becomes an accused, which, in the instant matter, occurred on the date of their arrest. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); and State v. Sweeney, 443 So.2d 522 (La.1983). In determining whether this constitutional right has been violated, no fixed time period governs; rather, the conduct of both the prosecution and defense are weighed in light of several factors: the length of the delay, the reasons for the delay, the defendant’s assertion of his right, and actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); and State v. Reaves, 376 So.2d 136 (La.1979). Louisiana, to insure that one’s minimum constitutional rights are protected, has provided that trial must begin within certain set periods of the institution of prosecution. In the instant matter, statute provides that such period is two years. LSA-C.Cr.P. art. 578(2).
In addition to these constitutional rights, Louisiana has statutorily provided shorter time limitations for those who actively seek their right to a speedy trial. See LSA-C. Cr.P. art. 701. Said statute provides in pertinent part that:
*621 D. After the filing of a motion for a speedy trial by the defendant, the time period for commencement of trial shall be as follows:
(1) The trial of a defendant charged with a felony shall commence within one hundred twenty days if he is continued in custody and within one hundred eighty days if he is not continued in custody.
Where the State fails to comply with this provision, defendant’s sole remedy at law is to be released without bail or to be discharged of his bail obligation. LSA-C. Cr.P. art. 701(D)(2).
In the matter sub judice, the record reflects that defendant-Johnson was arrested on August 9, 1984, while Combs was arrested the following day. On October 8, 1984, bills of information were filed charging defendants with the instant offenses. That same day, defendants were arraigned and pled not guilty. Trial having commenced on March 12, 1985, well within the two-year constitutional period, we find no constitutional violation of defendants’ right to a speedy trial.
Therein, defendants further assert that the trial court erred in failing to quash their indictments based upon the state’s failure to timely prosecute. While the commencement of defendants’ trial exceeded the Louisiana statutory delays permitted, defendants’ remedy is not the quashing of their indictments, but rather, defendants’ sole statutory remedy would have been to be released without bail or to be discharged from their bond obligation. LSA-C.Cr.P. art. 701(D)(2). Based hereon, we find defendants’ assignments of error to be without merit.
ASSIGNMENTS OF ERROR NOS. 4 and 6
Defendants next assert that the evidence failed to support their convictions. Specifically, they assert that the State failed to prove the requisite intent to permanently deprive Beckwith of her money through fraudulent conduct, practices or representations. Based thereon, defendants also contend that the trial court erred in failing to grant their motion for judgment of acquittal at the close of the state’s case-in-chief for the state’s failure to prove same.
We note that the proper method to raise an issue of the evidence’s sufficiency is by motion for post verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record fails to indicate that either defendant made such motion. Nevertheless, appellate courts must, on assignment of error, consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in LSA-C.Cr.P. art. 821. State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984).
In considering circumstantial evidence the law relative to the sufficiency of that evidence is, “assuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hyphothesis of innocence.” LSA-R.S. 15:438. However, where circumstantial evidence is used to convict, exclusion of every reasonable hyphothesis of innocence is simply a component of the more comprehensive reasonable doubt standard, providing an evidentiary guideline for the trier of fact and facilitating an appellate court in determining whether a rational trier of fact could have found guilt beyond a reasonable doubt. State v. Moore, 477 So.2d 1231 (La.App. 1st Cir.1985), writs denied, 480 So.2d 739, 741 (La.1986).
LSA-R.S. 14:68, unauthorized use of a movable, provides in pertinent part that:
Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the others consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to the civil matters, is immaterial.
*622 Applying the circumstantial evidence rule as a component of the more comprehensive reasonable doubt standard, we find that the evidence supports the trial court’s finding of defendants’ guilt.
The record clearly indicates that defendant-Johnson secured $6,000.00 from Beck-with for the lease of Pour-L Karmaleta. It also reflects that the installment sale contract between defendant-Johnson and Dr. Buhr expressly prohibited the lease, offer to sell or lease, or otherwise transfer and/or encumber the horse without written permission of Dr. Buhr. Moreover, delivery of Four-L Karmaleta was never permitted due to defendant-Johnson’s failure to pay for the animal. While defendant-Johnson stated that he offered to return Beck-with’s money within a week of their agreement, the record reflects that at the time of his arrest, numerous unsuccessful attempts had been made by her to collect same. The record is replete with evidence of defendant-Johnson tendering checks for payment which were subsequently dishonored. Moreover, the record reflects that defendant-Combs, brother of defendant-Johnson, received some of the funds from Beckwith.
The trial court may accept or reject, in whole or in part, the testimony of any witness. State v. Mullins, 464 So.2d 459 (La.App. 1st Cir.1985). In the instant case, the trial court evidently rejected defendants’ testimony and, to a great extent, chose to accept that of Beckwith and Dr. Buhr. We find, as evidently did the trial court, that the foregoing scenario adequately supports the trial court’s finding of guilt for the crime of unauthorized use of movables of a value in excess of $1,000.00 as to both defendants and excludes every reasonable hypothesis of innocence.
Further, under the facts presented herein, we find sufficient evidence was presented by the state at the close of its case-in-chief to sustain a conviction of unauthorized use of a movable of a value in excess of $1,000.00. See LSA-C.Cr.P. art. 778 and 814 A.(26). Based thereon, we find these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 5
Defendants next contend that the trial court erred in allowing inadmissible hearsay evidence to be admitted during Beck-with’s and Dr. Buhr’s testimony. Specifically, defendants allege that in permitting evidence on the bank’s dishonorment of checks presented to Beckwith and Dr. Buhr by defendant-Johnson, it erred.
Hearsay evidence, testimony in court of a statement made out of court, said statement being offered as an assertion to show the truth of the matters asserted therein, is inadmissible except under one of the statutory or jurisprudential exceptions. LSA-R.S. 15:434. Such evidence rests for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978). Nevertheless, in a judge alone trial, inadmissible evidence may be admitted, where by virtue of his training in the law, the judge is able to disregard irrelevant matters which are possibly prejudicial. See State v. Crothers, 278 So.2d 12 (La.1973), cert. denied, 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973); and State v. Bowman, 434 So.2d 1175 (La.App. 1st Cir.1983).
In the instant matter, both Beck-with and Dr. Buhr testified as to the bank’s dishonorment of defendant-Johnson’s checks upon presentment for payment. Further, the record indicates that defendant-Johnson freely admitted that certain checks had been dishonored. Even assuming the alleged hearsay evidence was improperly admitted into evidence, we find that the evidence was merely cumulative or corroborative of other evidence admitted, rendering its admission harmless. See State v. Reed, 441 So.2d 1257 (La.App. 1st Cir.1983). Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 7
Defendants lastly assert that the trial court erred in allowing evidence of their alleged prior acts without proper notice. Specifically, they contend that all testimony relating to their dealings with Dr. Buhr, *623 prior to any agreement with Beckwith, was subject to the Prieur notice. See State v. Prieur, 277 So.2d 126 (La.1973).
In State v. Haarala, 398 So.2d 1093, 1097 (La.1981), our supreme court stated that:
As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Monroe, 364 So.2d 570 (La.1978); State v. Sutfield, 354 So.2d 1334 (La.1978). This rule results from the belief that admission of this type character evidence creates a great risk of unjust convictions because a jury is likely to give the evidence excessive weight and convict the defendant merely because he is a bad man, because the defendant may well be unprepared to face such attacks, and because a jury is likely to be confused by proof of collateral issues. State v. Prieur, 277 So.2d 126 (La.1973); Comment, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614 (1973).
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state’s intention to introduce evidence of offenses which are part of the res gestae is required. See La.C. O.P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975).
This Court has approved the admission of other cimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused’s character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940).
In the matter sub judice, defendant-Johnson admitted that Four-L Karmaleta was from the outset of his dealings with Beckwith, the object of the agreement with her. He further admitted that the $6,000.00 commission paid to Combs by Dr. Buhr in connection with the sale of the five horses to Arabian Horse Partnership Number 3 was used by defendant-Johnson to make the payments due on his behalf regarding his own contracts with Dr. Buhr. The fact that the events and circumstances leading to the commission of the offenses forming essential elements of the crimes charged occurred over a period of months does not, under the circumstances herein, render the allegedly improperly admitted evidence inadmissible or irrelevant. Nor does that evidence due to its separation in time with the chain of events, become a separate offense. All of these activities were integral parts of the transaction to defraud Beckwith. Facts and circumstances of illicit conduct do not always fall into neat, compact patterns. See State v. Boone, 364 So.2d 978 (La.1978), cert. de *624 nied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979).
We find that the testimony complained of was necessary to explain the facts surrounding the commission of the crime charged. Accordingly, that testimony was relevant and admissible. LSA-R.S. 15:441. Moreover, we note that defendants had received notice pursuant to LSA-C. Cr.P. art. 768, that the state intended to introduce evidence of the statements made by defendant-Johnson to Dr. Buhr that defendant-Combs had been killed in an automobile accident; that defendant-Combs was unrelated to defendant-Johnson[2]; and all statements made to Dr. Buhr concerning the proposed purchase, rental, or lease of the horse(s) from Dr. Buhr. Based hereon, we find that Prieur notice was not required herein. As such this assignment of error is without merit.
For the above and foregoing reasons, defendants’ convictions and sentences are hereby affirmed.
AFFIRMED.

. Defendant William B. Johnson testified that he has also been known as Dana Drey McCann, "Doc” Johnson, Dr. William Brandon, Randall Johnson, III and Rodger Pearlmudder.

. The record reflects that defendant-Johnson and defendant-Combs are brothers.