527 So.2d 1023 (1988)
STATE of Louisiana
v.
John BUTTERS.
No. 87 KA 1639.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1024 Walter P. Reed, Dist. Atty., Covington, William R. Campbell, New Orleans, for State.
Clarence P. Guillory, Asst. Indigent Defender, Covington, for defendant.
Before COVINGTON, C.J., and SAVOIE and LEBLANC, JJ.
SAVOIE, Judge.
John Butters was charged by bill of information with incest with a descendant, in violation of LSA-R.S. 14:78. He pled not guilty and, after trial by jury, was found guilty as charged. He received a sentence of fifteen years at hard labor. The defendant has appealed, alleging seven assignments of error, as follows:
1. The trial court erred in admitting evidence of other crimes.
2. The trial court erred in denying the defendant's motion for a mistrial.
3. The trial court erred by improperly charging the jury as to the elements of the crime.
4. The evidence was insufficient to support the defendant's conviction.
5. The trial court erred in denying the defendant's motion for a new trial.
6. The trial court erred in denying the defendant's motion for a post-verdict judgment of acquittal.
7. The trial court erred in imposing an excessive sentence.
Between January 1, 1986, and August 31, 1986, the defendant engaged in sexual intercourse with his then eleven year old daughter. At the trial, the victim's former teacher, Robin Cardinelli, characterized the victim as a learning disabled child who functioned at the fourth grade level while in the fifth grade. The victim testified that the defendant had engaged in both vaginal and anal sexual intercourse with her and that this conduct occurred on more than one occasion. However, she was unable to relate any specific dates or identify the sequence in which these acts took place.
Describing one sexual episode, the victim testified that the defendant summoned her to his bedroom, placed her on the bed, and removed her pants. The defendant did not remove his pants. Instead, he unzipped them, laid down on top of her, and inserted his penis into her vagina. The victim also testified that the defendant touched her breasts and engaged in anal sexual intercourse with her. She testified that the above conduct occurred when her mother was at work. However, her brother was home when this particular episode took place.
The victim's brother testified about the sexual incident described above. He testified that he entered the bedroom in response to a call from the victim and observed the defendant and the victim lying on the bed. Although he testified that they had their clothes on, he also stated that the victim was on her back and the defendant was on top of her.
*1025 The two doctors who physically examined the victim reached different conclusions about whether or not she had been sexually abused. Dr. Francis Rodwig, an expert in gynecology, testified that he examined the victim on October 10, 1986. He took a history and conducted a complete physical examination of the victim which took approximately forty-five minutes. He testified that his pelvic examination of the victim revealed findings that were within normal limits and that the hymenal ring was intact, although there was some "possible scarring external to the hymenal ring." His rectal examination of the victim also revealed no abnormalities. Dr. Rodwig concluded: "I felt after completing my examination I could find no evidence of actual sexual abuse, but the child had given a history of such that there may be some. With the few physical findings, [sic] that some activity may have taken place." Dr. Rodwig also stated that the victim told him that the defendant had been sleeping with her when her mother was at work, but she denied that her father had had actual sexual relations with her.
Dr. Rebecca Russell, an expert in pediatric medicine and child abuse, testified that she examined the victim on December 23, 1986. She stated that, although she did not time her interview and examination of the victim, in general, such an interview and examination would take three to four hours. She testified that her pelvic examination of the victim revealed the hymen had a "worn healed gap" and a band of scar tissue. Dr. Russell also testified that the victim's hymenal opening and vaginal cavity were large enough to accommodate an adult male penis, although the exam indicated that the victim was not routinely sexually active.
Dr. Russell testified that her rectal examination of the victim was conducted with the victim in the knee-chest position and that this examination indicated that the victim's anus gaped open. Dr. Russell testified that her findings from the rectal examination were consistent with the repeated insertion of some object into the victim's anus. She testified that conducting a rectal examination while the person was in the knee-chest position was a relatively new procedure. Finally, Dr. Russell testified that she had listened to the previous testimony of Dr. Rodwig and concluded that Dr. Rodwig had conducted his rectal examination of the victim while the victim was positioned on her back.
Dr. Valerie Turgeon, who was accepted by the trial court as an expert in psychology and a child abuse specialist, testified that she had examined the victim on September 23, 1986. She testified that her analysis of the victim led her to conclude that the victim had been sexually abused.
At the trial, the victim's mother was asked whether or not the victim had ever reported this sexual abuse. The victim's mother replied: "She would tell me that her daddy was messing with her, but she wouldn't go into detail with me. And I never thought about asking her, because I just thought because [sic] he was always onto her about something."
On cross-examination, the victim's mother testified that her marriage to the defendant had encountered problems since his back injury in 1979. She testified that at times the defendant had severely disciplined his children with a belt. She also testified that a family friend, Albert Cordez, had visited their home on an almost daily basis in the last year. However, she testified that the victim had never accused Mr. Cordez of molesting her. The victim's mother also testified that the victim had never denied that the defendant had molested her.
The defendant did not testify at the trial. His brother, Edward Butters, testified that on two occasions he had seen Mr. Cordez and the victim "horsing around" and touching each other's genitals. He also testified that, on a later occasion when he observed Mr. Cordez standing in the hall and looking into the victim's room, he took Mr. Cordez down the street, threatened him with a gun, and informed him to never return. He testified that, since that date, Mr. Cordez had not returned. Edward Butters testified that he informed the defendant of these incidents concerning Mr. Cordez, but *1026 the defendant was under medication for his back and did not appear to understand. Finally, he testified that he had also informed the victim's mother of these events; she had replied that he should not worry about it.
The defendant's oldest son from a previous marriage (the victim's half brother) testified that on one occasion around Christmas, 1986, the victim had stated that the defendant "didn't touch her". He testified that the victim made this statement in the presence of several people, including his wife, Carol, and his stepmother (the victim's mother). His wife, Carol Butters, corroborated his testimony about this denial made by the victim. However, on rebuttal, the victim's mother testified that she was out of town during Christmas, 1986, and she did not even see her stepson and his wife Carol at this time. Finally, she testified that her stepson would not speak to the family.
ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
In assignment of error number one, the defendant contends that the trial court erred in overruling his objection to other crimes evidence. In assignment of error number two, he contends that the trial court erred in denying his motion for a mistrial made on this basis. The trial court denied both the defendant's objections and his request for a mistrial, concluding that the evidence in question was part of the res gestae.
At the trial, the victim testified that she had engaged in both vaginal and anal sexual intercourse with the defendant. The defendant entered his first objection at this point and moved for a mistrial. Later, when Dr. Russell related her findings from her rectal examination of the victim, the defendant again objected and moved for a mistrial. The trial court denied these objections and motions for a mistrial.
As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Johnson, 496 So.2d 616, 623 (La.App. 1st Cir.1986), writ denied, 501 So.2d 206 (La.1987). However, the general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed and, thus, are part of the res gestae.[1]State v. Rounds, 476 So.2d 965 (La.App. 1st Cir.1985). This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Johnson, supra; State v. Rounds, supra.
Specifically, the defendant argues that the evidence of anal intercourse was prejudicial, other crimes evidence and was not admissible. He notes that anal intercourse is punished if it occurs as rape, sexual battery, or crime against nature.[2] However, he argues that the Legislature has not included anal intercourse in the definition of incest.[3] In other words, he argues that the term "sexual intercourse", as defined in LSA-R.S. 14:78, merely refers to vaginal intercourse and does not include anal intercourse. Finally, the defendant points out that the victim's testimony about these incidents of vaginal and anal intercourse with the defendant lacks a chronology. He argues that the victim's testimony about the act of anal intercourse, to which he objected, was a separate incident from the act of vaginal intercourse about which the victim also testified.
We disagree with defendant's contention that anal intercourse is not included *1027 in the definition of "incest." We find that "sexual intercourse" as set out in LSA-R.S. 14:78 indicates both vaginal and anal sexual intercourse, as will be discussed under assignment of error number three. However, even assuming that anal intercourse is not prohibited by the statute prohibiting incest, LSA-R.S. 14:78, we find that the trial court did not err in admitting the evidence dealing with the anal intercourse. We note that the victim's testimony about the defendant's sex acts did not include specific dates. However, our review of the victim's testimony indicates that, when the defendant objected to her testimony about an act of anal intercourse, the victim was in fact relating a single incident during which the defendant penetrated her both vaginally and anally. The testimony of Dr. Russell that her findings from the rectal examination of the victim showed repeated insertion of some object into the anus was also admissable. From the victim's testimony it is apparent that the incident she was describing which included both anal and vaginal intercourse was characteristic of defendant's sexual abuse of her. Therefore, we conclude the trial court correctly ruled that the victim's testimony about engaging in anal intercourse with the defendant was admissible as a part of the res gestae.
These assignments of error are meritless.
ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, the defendant contends that the trial court erred by improperly charging the jury as to the elements of the crime of incest.
The trial court's jury instruction on incest provided, in pertinent part:
The defendant is charged with the crime of incest in violation of Louisiana Revised Statutes 14:78, by engaging in sexual intercourse with ... [the victim], a descendant of the defendant.
Incest is defined as the marriage to or sexual intercourse with any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship.
The relationship between the defendant and the victim must be by consanguinity, but it is immaterial whether the parties to the act are legitimate or illegitimate or related to one another by whole or half blood.
Emission is not necessary to constitute sexual intercourse, and penetration, however slight, is sufficient to complete the act.
Thus, in order to convict the defendant of the crime of incest, you must find, number one, that the defendant engaged in sexual intercourse with ... [the victim]; and number two, that ... [the victim] is a descendant of the defendant; and number three, that the defendant had knowledge of his relationship to ... [the victim].
Whoever is convicted of the crime of incest where the crime is between an ascendant and descendant and/or between brother and sister, shall be punished by imprisonment at hard labor for not more than fifteen years.
In order for the defendant to properly preserve his objection to the trial court's general charge to the jury, he must comply with the contemporaneous objection rule. An objection to the general jury charge is timely if made immediately after the jury is retired. State v. Mack, 403 So.2d 8 (La. 1981); State v. Hardeman, 467 So.2d 1163, 1171 (La.App.2d Cir.1985). In the instant case, immediately after the trial court finished its charge to the jury, the court asked if there were any objections to the charge. The defendant timely objected to the following portion of the trial court's instruction on incest: "Emission is not necessary to constitute sexual intercourse, and penetration, however slight, is sufficient to complete the act."
In his brief, the defendant notes that "sexual intercourse" is not defined by the incest statute, LSA-R.S. 14:78, nor is it defined anywhere else in the Code of Criminal Procedure. Therefore, he argues that the term "sexual intercourse" is commonly understood by adults and that the jury *1028 should have been left to apply their own understanding to the term, rather than the trial court attempting to define it.
The trial court's instruction was obviously patterned after the definition of sexual intercourse in the rape statute. See LSA-R.S. 14:41 B. That definition is the legislatively and judicially recognized one for sexual intercourse in the broad criminal offense of rape. Moreover, Webster's Third New International Dictionary, 1966, defines "sexual intercourse" as "sexual connection esp. between humans." The normally accepted meaning of the phrase does not require either emission or more than slight penetration. In interpreting the articles of the criminal code, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context and with reference to the purpose of the provision. LSA-R.S. 14:3; State v. Magee, 491 So.2d 454 (La.App. 1st Cir.1986). Therefore, we find that "sexual intercourse" as used in LSA-R.S. 14:78 does not require proof of emission, and penetration, however slight, is sufficient to complete the crime. Furthermore, we note that the defendant did not explain at the trial or in his brief how he was prejudiced by this charge. It is well established that the ruling of the trial court on an objection to a portion of his charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial. State v. Perry, 408 So.2d 1358 (La.1982); State v. Smith, 447 So.2d 42 (La.App. 1st Cir.1984). Even assuming, arguendo, that the trial court erred in including this particular charge in its jury instruction on incest, when considering the entire jury charge together with the evidence introduced at trial, we conclude that the defendant was not prejudiced by the inclusion of this particular charge.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NUMBERS FOUR, FIVE, AND SIX:
In assignment of error number four, the defendant contends that the evidence was insufficient to support his conviction of incest. In assignments of error numbers five and six, the defendant contends that the trial court erred in denying his motions for new trial and post-verdict judgment of acquittal, which were also based on the issue of the sufficiency of the evidence.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
In his brief, the defendant admits that the victim was the key prosecution witness, and that without her testimony the conviction could not stand. He points out that her credibility was suspect because she was a learning disabled child who "had been coached through her seven or eight interviews" with social workers. He also points to the fact that she may have had a motive for revenge, due to the stern disciplining with a belt which she had received from the defendant in the past. The defendant notes the fact that, at times, the victim denied that she had been sexually abused.
The defendant also points to conflicting testimony between prosecution and defense witnesses. He notes that the victim's half brother and his wife testified that the victim had repudiated her accusation in their presence. The defendant notes the different findings of Drs. Rodwig and Russell and the fact that their two examinations of the victim were conducted over two months apart. Finally, the defendant points to the testimony of the defendant's brother, Edward Butters, about the improper conduct between Mr. Cordez and the victim.
Nevertheless, the victim's testimony, if believed, established that the defendant had engaged in vaginal and anal intercourse with her on more than one occasion. The victim testified that this conduct occurred when her mother was at work. The testimony of her brother indicates that he apparently witnessed one such episode in *1029 which he observed the defendant in bed lying on top of the victim. The testimony of Drs. Russell and Turgeon indicated that the victim had been sexually abused. The victim's mother also testified that the victim had stated that the defendant was "messing" with her, although at the time she did not pay attention to the accusation.
As the trier of fact, the jury, by returning a verdict of guilty, obviously concluded that the victim was a credible witness. Additionally, the guilty verdict indicates that the jury accepted the testimony of the victim's brother, the victim's mother, Dr. Russell and Dr. Turgeon, while rejecting the conflicting testimony of Dr. Rodwig and the defense witnesses. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, supra.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of incest with his daughter.
These assignments of error are meritless.
ASSIGNMENT OF ERROR NUMBER SEVEN:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
The Code of Criminal Procedure sets forth the factors which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Jennings, 479 So.2d 639 (La.App. 1st Cir.1985). In light of the criteria expressed by Article 894.1, a review of the individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061, (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the trial court has wide discretion in the imposition of sentences; a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Johnson, 486 So.2d 853 (La.App. 1st Cir.1986).
Before imposing sentence, the trial court stated that it had reviewed the presentence investigation report. The trial court noted that the defendant had a criminal record, including a prior felony theft conviction and a misdemeanor conviction of soliciting for prostitution. The presentence investigation report indicated that the defendant had been given a suspended sentence and probation for the felony theft conviction. However, he never reported for probation, and his probation eventually terminated unsatisfactorily.
Reviewing the Article 894.1 guidelines, the sentencing record reflects that the trial court found many aggravating circumstances. The trial court stated that the defendant had not acted under provocation by the victim and that the victim had not induced or facilitated the commission of this offense. The trial court ruled out the possibility of a suspended sentence and probation, noting that the defendant was a second felony offender. Additionally, the trial court concluded that there was an undue risk that the defendant would commit another crime of this nature. Finally, the trial court concluded that the defendant was in need of correctional treatment and stated that any lesser sentence would deprecate the seriousness of the offense.
For his conviction of incest with a descendant, the defendant received the maximum sentence of fifteen years at hard labor. See LSA-R.S. 14:78 D (1). This Court has stated that the maximum sentence permitted under a statute may be imposed only in cases involving the most serious offenses and the worst offenders. State v. Easley, 432 So.2d 910 (La.App. 1st *1030 Cir.1983). Clearly, this is the most serious type of offense in the category of incest with a descendant, since the defendant engaged in both vaginal and anal intercourse with his daughter over an extended period of time. Trial testimony indicated that the victim was extremely upset by the fact that the defendant's conduct had resulted in her and her siblings being placed in foster homes. The victim will almost certainly suffer future emotional problems as a result of this offense. The fact that the defendant had a prior criminal record and had engaged in this type of activity with both the victim and another daughter indicates that he was the worst type of offender.[4] We note that the maximum sentence for a violation of LSA-R.S. 14:78 has been upheld in a case which contained facts similar to those in the instant offense. See State v. Matthews, 517 So.2d 1064 (La.App. 3rd Cir.1987). Considering the circumstances of this offense and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentence imposed.
This assignment of error is meritless.
AFFIRMED.
NOTES
[1] See LSA-R.S. 15:447, 448.
[2] See LSA-R.S. 14:41, 43.1, and 89.
[3] LSA-R.S. 14:78 provides, in pertinent part:

A. Incest is the marriage to, or sexual intercourse with, any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship.
B. The relationship must be by consanguinity, but it is immaterial whether the parties to the act are legitimate or illegitimate or related to one another by the whole or half blood.
[4] The record contains testimony, given by another daughter (from a prior marriage and the victim's stepsister) in a pre-trial hearing to determine the admissibility of other crimes evidence, that the defendant had also engaged in sexual intercourse with her, even after she had married.