673 So.2d 663 (1996)
STATE of Louisiana
v.
Taurus BUCHANON.
No. 95 KA 0625.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*664 Doug Moreau, District Attorney, by Gwendolyn Brown, Aaron Brooks, Assistant District Attorneys, Baton Rouge, for Appellee State of Louisiana.
Edward Greenlee, Baton Rouge, for Defendant-Appellant Taurus Buchanon.
Before LOTTINGER, C.J., and GONZALES, and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The defendant, Taurus Buchanon, was charged by grand jury indictment with one count of second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty but, after a jury trial, was found guilty as charged and was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served. The defendant now appeals, designating fourteen assignments of error, but only briefing five. Assignments of error not briefed on appeal are considered abandoned. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.

FACTS
The victim, twelve year old Joshua "Jacques" Brown, died as a result of injury sustained during a street fight in Baton Rouge on July 15, 1993. Fifteen year old Kyle, twelve year old M.H. (Kyle's brother), *665 and the sixteen year old defendant (the cousin of Kyle and M.H.), were all involved in the fight. An eye-witness to the fight testified that the defendant said, "this is how you do the bitch," and struck the victim on the victim's left temple, with defendant's right fist.
Dr. Alfredo Suarez, the state's expert in pathology, performed an autopsy on the victim on the day after his death. According to Dr. Suarez, the cause of death was blunt trauma to the left frontal region of the victim's head. Dr. Suarez identified a bruise he found on the victim's head between the victim's temple and the left side of his forehead. The doctor opined that the victim's neck had been hyperextended after the blow, causing a rupture of his vertebral artery. This rupture caused considerable bleeding at the victim's brain stem, resulting in loss of consciousness and difficulty in breathing, which may sound like snoring. The doctor gave his opinion that the victim did not see the blow coming. Therefore, his posterior muscles, which keep the head in position, did not have a chance to react. Dr. Suarez stated that the bruise he found on the left frontal region of the victim's head was the only significant blow to the head which the victim had suffered. When asked whether the victim's body showed any evidence of being picked up and "banged" on the head, the doctor responded that the result of that trauma would be different from the trauma suffered. When asked if a kick in the head by a tennis shoe could have caused the death of the victim, the doctor answered, "yes."

ASSIGNMENTS OF ERROR NOS. 13 & 14
In these assignments of error, the defendant contends that the district court erred in accepting a verdict not responsive to the facts, and that the evidence was insufficient to support his conviction.
In order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should proceed by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, in the interest of justice, we consider the claim of insufficiency of the evidence because it has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Pursuant to La.C.Cr.P. art. 821, when reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984).
The defendant was found guilty of the second degree murder of the victim. The crime of second degree murder, in pertinent part, "is the killing of a human being: (1) [w]hen the offender has a specific intent to kill or to inflict great bodily harm...." La. R.S. 14:30.1(A)(1). The defendant argues that there was no credible evidence with which the state could bear its burden of proving his specific intent to kill or inflict great bodily harm.
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. State v. Kahey, 436 So.2d 475, 494 (La.1983). Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Graham, 420 So.2d 1126, 1128 (La. 1982).
Detective John Colter was the first witness to testify for the state. The detective identified four photographs of the defendant taken in his office shortly after 3:00 p.m. on the date of the incident. Two of the photographs showed frontal views of the defendant, and two of the photographs showed frontal views of the defendant's hands. Detective Colter described how the photograph *666 of the defendant's right hand, middle finger, main knuckle, showed an abrasion or contusion, approximately a quarter of an inch long.
Mary Rodgers, a resident of Kaufman Street at the time of the incident, testified that she was waiting for the mailman about fifteen to twenty feet away from the "fight," at the beginning of the incident. Rodgers saw Kyle and the victim walking down Kaufman Street. Suddenly, Kyle began hitting the victim. The victim did not fight back but, rather, pled to be left alone. M.H. (Kyle's brother), joined his brother in hitting the victim, stating, "[N]ow, we've got your number, motherfucker, bitch, we've got you now. You're on our street." The victim remained standing while Kyle and M.H. were hitting him, even after backing into a ditch while trying to get away. Rodgers moved closer to the boys during the fight, just before the defendant became involved. The defendant approached the boys, said, "this is how you do the bitch," and struck the victim on the victim's left temple. The victim did not see the blow coming. The blow jolted the victim enough to make his tennis shoe come "halfway off." The victim fell to the ground, made a snoring sound, and then stopped breathing. Kyle kicked the victim in the chest, and M.H. kicked him in the back. The state asked Rodgers if the defendant had been showing Kyle and M.H. "how to hitinflict some great bodily harm," when he struck the victim. Rodgers stated, "Yeah." Rodgers pointed out the defendant in court as the person she had witnessed strike the victim. Rodgers also stated that if anyone would have body-slammed the victim she would have seen them, and that no one did.
M.H. testified at trial. According to M.H., on the day in question, his brother, Kyle, and the victim argued, the victim called Kyle names, and they began fighting. M.H. stated that he joined in the fight, although Kyle was beating up the victim. The victim was still standing after M.H. hit him in the back with his fist. Next, his cousin, the defendant, "ran out the house," and hit the victim in the left temple. The victim fell after the defendant hit him. The victim began making "a funny kind of breathing sound, like a snore." M.H. stated that, after striking the victim, the defendant stated, "[T]hat's the way you hit a bitch." The victim did not see the defendant coming. M.H. kicked the victim once in the back after he was down. M.H. also stated that he knew Cedric Prophet, and that Prophet had not body-slammed the victim.
Kyle was called to the stand, but did not answer many of the questions asked by the district attorney. Kyle would not vouch for his statement, allegedly given to the police; that, after the defendant hit the victim, "Ced" picked the victim up and threw him down on the rocks, and M.H., Troy and Reginald started "stomping him."
Thirteen year old Altorie Smith testified for the state. Smith stated that, on the day of the incident, the victim and he had been riding a bike, on their way to cut someone's grass. Smith and the victim saw Kyle outside. The victim and Kyle began talking about a fight they had had at school. Kyle whispered something in the defendant's ear, and told Kyle's friends to "get" the victim. Kyle grabbed the victim by the shirt and started hitting him. M.H. joined in, and the defendant, who hit the victim in his left temple. Smith did not hear the defendant say anything after hitting the victim, but was not close at that time. Smith also stated that he did not see Prophet body-slam the defendant. Smith pointed to the defense table when asked to point out the person he saw punch the victim.
Reginald Johnson testified that on the day in question Altorie and the victim had come to his house to play. Johnson stated that Kyle remembered something that happened "back in the days about school." Kyle walked with the victim, and then ran behind him and started fighting him. The defendant entered the fight and hit the victim in the left temple. The victim fell. Johnson believed that the victim saw the punch from the defendant coming, but that the victim was "sideways" when the defendant punched him. Johnson further stated that he heard the defendant say, after punching the victim, "[T]his how you hit a nigger." Johnson stated that Cedric Prophet and Demitrius Johnson were his brothers, and Troy Gibson was a cousin. Johnson admitted that when first *667 interviewed by the prosecutor, he said that the defendant did not hit the victim. However, later in the interview, he admitted that was not the truth. Johnson also stated that Prophet had not body-slammed the victim.
The defendant presented Romaine Monique Roddy, his aunt, as a witness. Roddy stated that she was at her home on Kaufman Street at the time of the incident. She saw Kyle and M.H., her cousins, "stomping that little boy" (the victim). M.H. was kicking the victim in the stomach and left side. Kyle was kicking the victim in the head, chest and throat. Roddy saw the defendant on the other side of the road standing in Rodgers' yard.
On cross-examination, however, the state produced written statements given by Roddy to the investigating officers. In the statements, Roddy allegedly said that "Taurus and [M.H.] was (sic) stomping and kicking at [the victim]," and that "Taurus might have hit him." Roddy did not know whether the defendant had struck the victim because she was not "out there when [the victim] was [on] the ground."
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518.
The jury, well aware of the option of returning a verdict of second degree murder, a responsive verdict of manslaughter, or a verdict of not guilty, concluded that this case was one of second degree murder. The jury returned a verdict of guilty of second degree murder. Necessarily, the jury reached a conclusion that specific intent to inflict great bodily harm was present. The record reviewed in its entirety supports the jury's determination. The evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the defendant specifically intended to inflict great bodily harm upon a younger, and much smaller, victim by striking him on the left temple with his fist. The blow, coming from the victim's blind side, knocked the victim's tennis shoe halfway off and killed him. These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 9 & 10
In these assignments of error, the defendant contends that the district court erred in denying his request for a special jury instruction defining negligent homicide and in denying his request to present negligent homicide as a responsive verdict.
Negligent homicide, La.R.S. 14:32, is not a responsive verdict to a charge of second degree murder. La.C.Cr.P. art. 814(A)(3). The only responsive verdicts which may be rendered when the indictment charges second degree murder are 1) Guilty; 2) Guilty of manslaughter;[1] and 3) Not Guilty. The court was obligated to charge the jury on these verdicts, and did so. See State v. Jackson, 450 So.2d 621, 632 (La. 1984).
The court also was obligated to charge the jury as to any theory of defense which the jurors could reasonably infer from the evidence. Jackson, 450 So.2d at 632; see La. C.Cr.P. art. 802. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807.
The offense of negligent homicide was not fairly supported by the evidence. Thus, the defendant's special jury charge regarding *668 negligent homicide was not pertinent. See Jackson, 450 So.2d at 633. These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 12
In this assignment of error, the defendant contends that the district court erred in giving a jury instruction on the law of principals.
It is well settled that the ruling of a trial court on an objection to a portion of its charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial. State v. Perry, 408 So.2d 1358, 1363-1364 (La.1982); State v. Butters, 527 So.2d 1023, 1028 (La.App. 1st Cir.1988).
The district court instructed the jury that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." The district court must charge the jury as to the law applicable to the case. La.C.Cr.P. art. 802(1). The charge read by the court was the definition of principals provided by La.R.S. 14:24.
Under the facts presented in this case, we do not find the disputed portion of the charge to the jury to be erroneous or prejudicial. This assignment of error is without merit.
For the foregoing reasons, we affirm the sentence and the conviction of the defendant.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] While conceding that he failed to specifically object to the court's jury instruction on manslaughter, the defendant still attacks the sufficiency of the charge in brief. Jury instructions are not errors patent and, absent a contemporaneous objection, a defendant may not complain of an allegedly erroneous jury charge on appeal. La.C.Cr.P. arts. 801, 841, and 920(2); State v. Bacon, 578 So.2d 175, 179 (La.App. 1st Cir. 1991), writ denied, 93-0694 (La. 3/30/95), 651 So.2d 857.