507 So.2d 850 (1987)
William E. WALKER, Jr.
v.
INVESTMENT PROPERTIES, LTD.
Nos. 87-CA-57, 87-CA-58.
Court of Appeal of Louisiana, Fifth Circuit.
May 1, 1987.
Rehearing Denied June 17, 1987.
M. Arnaud Pilie, New Orleans, for plaintiff-appellee.
Mark C. Landry, Metairie, for defendantappellant.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal by Investment Properties, Ltd. (IPL) from a judgment awarding its attorney $1,000 in attorney fees for collection of three promissory notes, rather *851 than 30% of the principal and interest as specified in the notes (which would amount to $103,237.67). Because we find that the trial court properly relied on the Code of Professional Responsibility, Disciplinary Rule 2-106, in fixing the fee, and that the fee awarded was reasonable, we affirm.
The undisputed facts of this case are as follows: William Walker was the maker of three promissory notes payable to American Bank and Trust Co. The notes were payable "on demand, or if no demand is made, then on" specified dates. The due date of the first note for $125,000, was January 2, 1985, that of the second for some $37,000, was January 16, 1985, and that of the third for $150,000, was February 14, 1985. On January 11, 1985, the bank sold the notes to IPL. There is nothing in the record to indicate whether the bank had communicated with Walker concerning the first note which was then 9 days overdue. Nonetheless, on January 14, 1985, IPL turned the notes over to an attorney for collection.
The attorney wrote to Walker on that same date notifying him that IPL had purchased the notes and was making demand for payment. He further requested that Walker contact him for the payout figures on the notes, and stated that if Walker failed to do so he would institute foreclosure proceedings.
Walker's attorney duly telephoned IPL's attorney, and requested some time for Walker to work something out. In a second phone conversation, a meeting was arranged for 1 p.m. on January 28. In a third phone conversation, on the morning of January 28, the payout figures were supplied to Walker's attorney and these figures were also provided in writing sometime before the meeting. At the meeting Walker's attorney produced a cashier's check payable to Walker and IPL, and endorsed by Walker, for $344,125.56, representing the full principal and interest on the notes. He produced a second blank check signed by Walker and made payable to himself, which he was authorized to complete as to a reasonable attorney fee and endorse over to IPL. IPL declined to discuss any attorney fee of less than 30% of principal and interest as appearing in the notes, which amounted to $103,237.67, and refused tender of the check for principal and interest unless legal fees in that amount was paid.
Two days later, Walker filed suit to enjoin IPL from attempting to foreclose on the collateral securing the notes and deposited the $344,125.56 check into the registry of the court. A preliminary injunction issued on February 27, 1985, and in his reasons for this judgment the trial court stated that IPL's attorney was only entitled to an "earned fee", and that "it would be unreasonable to allow him to receive $103,237.67".
During the course of subsequent litigation, some $200,000, of the deposited funds were paid to IPL. However, no action was ever initiated by IPL's attorney to have the court fix a reasonable attorney fee and put an end to the litigation. It was instead Walker who finally sought declaratory judgment in a separate action on this issue in March, 1986, in an attempt to put the matter to rest and recover the notes and underlying collateral. It was in its reconventional demand, in this separate suit that IPL first sought judicial determination of whether it was entitled to the contractual attorney fees appearing in the notes. It also sought conventional interest on the outstanding balance of some $140,000, still due on the notes, from January 1985 until paid.
This suit was consolidated with the prior injunctive action. On June 23, 1986, the trial court held that Walker had made valid legal tender of the total amount due on the notes as of January 28, 1985, and that no further interest was due on the notes as of that date. A subsequent hearing was held to receive evidence as to the attorney fee. In a judgment of September 4, 1986, the trial court fixed the fee at $1,000, for work performed by IPL's attorney between January 14 and January 28, 1985. IPL now appeals.
Two basic errors are alleged. The first is that La.Civ.Code art. 2000, prohibits the courts from inquiring into the reasonableness *852 of attorney fees fixed in a promissory note. The second asserts that there was no unconditional tender of the amount owed on the notes, and therefore interest continues to run on the remaining balance until paid.
The first question has recently been answered by our Supreme Court in Central-Progressive Bank-v. Bradley, 502 So.2d 1017 (La.1987). The court stated that "since [La.Civ.Code] art. 2000 attempts to regulate attorney fees, it will not be enforced when the attorney fees fixed by the parties are excessive and unreasonable". It further reiterated that the law applicable to attorney fees, even when stipulated in contracts, is Disciplinary Rule 2-106 of the Code of Professional Responsibility.
Section B of D.R. 2-106 states that "a fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee". It cannot be argued here that $103,000 is not excessive under the above standard on the facts of this case, and the trial judge properly found that it was in excess of a reasonable fee.
The argument of IPL as to the effect of art. 2000, although contrary to the holding in Central Progressive Bank, supra, must nonetheless be analysed further to determine the question of whether tender sufficient to stop the running of interest was made by Walker. Throughout this litigation, IPL advanced the theory that art. 2000 created a right in the noteholder himself to the stipulated attorney fees, whether they were actually paid to an attorney or not. There is no question that this is a fair reading of that article, and it was the interpretation adopted by the appellate court in its opinion in Central Progressive Bank v. Bradley, 496 So.2d 525 (La.App. 1st Cir. 1986) (overruled). Moreover, the concept that stipulated attorney fees are an obligation in favor of the creditor, rather than the attorney, is the only theory which would circumvent application of D.R. 2-106, as ennunciated in Saucier v. Hayes Dairy Products Inc., 373 So.2d 102 (La. 1979).
A separate line of cases has addressed the related question of whether stipulated attorney fees belong to the creditor or to his attorney. In General Investments Inc. v. Thomas, 422 So.2d 1279 (La.App. 5th Cir.1982), the court held that these fees belong to the attorney. The earlier case of Jefferson Bank and Trust Co. v. Post, 312 So.2d 907 (La.App. 4th Cir.1975), reached a similar conclusion and noted that if the creditor were given any part of such a fee, it would violate Code of Professional Responsibility, D.R. 3-102, which prohibits attorneys from sharing fees with non-attorneys.
In regard to tender of money in satisfaction of an obligation, the controlling law is La.Civ.Code, art. 1869, which states:
When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.
A valid tender is an offer to perform according to the nature of the obligation.
The jurisprudence interpreting this, and prior articles 2167 and 2168 (1870), has been to the effect that in order to produce the effects of performance, including termination of future interest and costs, the tender must be for the entire amount of the obligation as finally determined by the courts, Bourg v. Cane Air, 325 So.2d 738 (La.App. 1st Cir.1976). In addition, the tender must be unconditional, i.e. it cannot be predicated upon the creditor surrendering a potential legal right to a greater amount in order to accept the amount offered. Williams v. Hanover Insurance Co. of N.Y., 351 So.2d 858 (La.App. 2nd Cir.1977).
The first question which must be answered in the present case is whether the January 28, 1985, tender of principal and interest owed on the notes was unconditional. IPL contends that it was not because Walker refused to surrender these funds unless it gave up its potential right to recover *853 stipulated attorney fees. The record does not support this contention. The testimony of IPL's attorney was that Walker's attorney "tendered" the certified check for $344,125.46, but only offered an unspecified "reasonable" attorney fee. There is nothing to show that tender of the check was predicated on IPL agreeing to any particular attorney fee, or relinquishing any rights to litigate the amount of that fee or its entitlement to the entire stipulated fee pursuant to art. 2000. The testimony further shows that IPL refused to consider an attorney fee of less than $103,000. On the basis of this evidence, we cannot say that the trial court's factual finding that tender of the check was unconditional was manifestly erroneous.
The next question is whether the trial court was correct in finding that the amount tendered was the proper amount owed on the notes. IPL argues that because an additional $1,000 in attorney fees was awarded pursuant to the terms of the note, the tendered check was not for the entire amount of the indebtedness, and therefore interest and costs were not suspended on the obligation. This returns to the question of to whom do stipulated attorney fees belong. The Supreme Court's opinion in Central Progressive Bank, supra, leaves no doubt that Article 2000, notwithstanding, stipulated attorney fees are subject to court scrutiny under the Code of Professional Responsibility. That ruling can only be interpreted to mean that the amount of such stipulated fees does not accrue to the creditor, but accrues instead to the attorney and is thus subject to court regulation. Were the opposite case the provision in article 2000, that these fees constitute a part of the obligation to the creditor himself, would not run afoul of the court's authority to regulate the practice of law. They would instead simply be liquidated damages recoverable by the creditor under La.Civ.Code, arts. 2005, et seq.
Existing law is also to the effect that stipulated attorney fees belong to the attorney rather than to the creditor, General Investment, Inc., supra; Jefferson Bank and Trust Co. supra, and the Supreme Court opinion in Central Progressive Bank, supra appears to confirm this principle.
Applying these laws to the facts before us here, it is obvious that IPL has no claim to any attorney fees awarded by the court, and that its recovery on the notes is limited to interest, principal, and court costs occasioned by efforts to collect on the notes. There is no question that when the certified check was tendered, it covered all principal and interest due on the notes, and that no court costs had been expended at that time. IPL declined to accept Walker's unconditional offer of this amount and chose instead to litigate the validity of this tender under what it understood to be the terms of the notes. The trial court held, and we affirm, that the tender was valid and sufficient to satisfy all obligations owing to IPL by Walker, and therefore produced all of the effects of performance, including termination of interest and costs, pursuant to La.Civ.Code, art. 1869. See also La.R.S. 10:3-604. That the debtor is now cast in judgment for an additional $1,000 in attorney fees is of no consequence to the obligation owed the creditor because these funds do not go to the creditor.
This brings us to the final issue raised by IPL, which concerns actual costs and attorney fees occasioned by this entire litigation, which it claims is over $10,000. In this same regard, it asserts that the award of $1,000, in attorney fees was an abuse of the trial court's discretion. However, as noted above, the tender of January 28, 1985, produced all the effects of performance, to which the creditor was entitled, including the need for legal services to enforce performance and the debtor is not liable for costs or attorney fees occasioned by the creditor's unsuccessful attempt to collect more than the amount tendered.
We hold therefore that Walker is liable under the terms of the note only for work done by IPL's attorney between January 14, and January 28, 1985. We have also considered the evidence presented in support of a fee award in light of the criteria of D.R. 2-106, and find no manifest error *854 on the part of the trial court in fixing that fee at $1,000.
Walker has also answered this appeal, alleging that the trial court erred in refusing to order IPL to return the $150,000 note and collateral, which he asserts was satisfied by the earlier payment of $200,000 to IPL. This issue was previously before this court, Walker v. Investment Properties, Ltd., 483 So.2d 1131 (La.App. 5th Cir. 1986), and the same relief as that sought here was denied. The court noted that the injunction prohibiting IPL from foreclosing on the collateral was sufficient to protect Walker's interest pending the outcome of this litigation. We see no reason to rule otherwise at this time. Also note that upon finality and satisfaction of this judgment, it appears that all disputes between the parties will have been resolved and all notes and collateral should be returned to Walker. If they are not, Walker may then seek further relief in the district court.
For the foregoing reasons, the judgments of the trial court are hereby affirmed and IPL is cast for all costs of this litigation.
AFFIRMED.