| iBOWES, Judge.
Plaintiff, Stacey C. Ruttley (hereinafter “Ms. Ruttley”), appeals a judgment in favor of the defendant, Richard G. Steiner, and dismissing her suit for breach of contract. We affirm for the following reasons.

FACTS

Ms. Ruttley, as the widow of Ernest Palermo, had several claims for his wrongful death in an automobile accident for which she retained Steiner, by virtue of a contingency fee contract, to represent her. One of the claims which arose was for life insurance proceeds in the amount of $46,500.00, the full benefits available under the policy. The insurer denied coverage |2and, eventually, Steiner filed suit on her behalf. After several weeks, the insurer paid the entire amount plus costs and *1097 expenses. From this award, Steiner retained one-third, or $15,880.00.
Plaintiff later fired defendant and filed the present suit alleging that she did not agree to a contingency fee on this particular matter. Following a trial in the matter, the court dismissed plaintiffs suit. The court later denied plaintiffs motion for new trial, and she thus appeals.

TESTIMONY AND EVIDENCE

The contingency fee contract, introduced into evidence, reads in pertinent part as follows:
I hereby retain and employ RICHARD G. STEINER as my attorney to prosecute or settle all claims for damages against Chad Martin — Allstate or any and all others who shall be liable because of tort or contract on account of auto accident which occurred on or about the 11th day of January, 1986, at or near Golden Meadows [sic] Louisiana. In consideration for services rendered I agree to pay my attorney a sum equal to 33⅜% recovered from settlement, and 33⅜% of whatever may be recovered if a trial becomes necessary, and 50% if appeal becomes necessary. In consideration of the above, I transfer, set over and assign to my attorney, Richard G. Steiner, a percentage interest, as specified above, in and to the subject matter of my suit, proposed suit or claim.

TESTIMONY OF PLAINTIFF

Ms. Ruttley testified that she retained Steiner in January of 1986 to represent her in divorce proceedings against her husband, Ernest Palermo. Before the proceedings could be concluded, Mr. Palermo was killed in anjjjautomobile accident on January 11, 1986, and Ms. Ruttley consulted Steiner at his home that weekend regarding her right to participate in his funeral services. In addition to the information she had requested, at that time Steiner told her that a suit could be filed in connection with the accident. The dialogue included the determination that Steiner would take a one-third contingency fee on the lawsuit; however, there was no discussion about any life insurance proceeds. Late in February, on approximately February 22, 1986, plaintiff discovered that on December 3, 1985, her husband had taken out two life insurance policies at his place of employment; one, on his own life in the amount of $46,500.00, named her as his beneficiary with the second on plaintiff’s life naming Palermo as beneficiary. She again consulted Steiner, who told her that he would call the insurance company, Inter-State, for her and turn in the death certificate to claim the proceeds. She contends that no fee arrangement was agreed to on the insurance matter, nor was any contract entered into on this subject.
Plaintiff stated that she advanced Steiner $65.00 to pay the premium on the policy, which had not been paid during her husband’s lifetime. During the entire proceedings she had never received any correspondence from the attorney regarding the insurance claim. She also contends that she did not discuss the necessity of filing a lawsuit to obtain the insurance proceeds, nor did she ever sign a verification to the petition for the lawsuit. There was never any discussion about charging an hourly fee versus a | contingency fee; although he told her he would get one-third of her recovery on the tort suit, he did not explain that he would take one-third of the insurance proceeds. She was unaware, until told by Inter-State, that Steiner had even filed a suit or was negotiating a settlement; she did not authorize him to settle the claim. After the insurance question was settled in the amount of $47,640.00, a check was made payable to herself and Steiner; the attorney told her to endorse the cheek, that he would deposit it into his account, and then give her a separate cheek for her share. Steiner’s secretary handed her the settlement agreement, which she signed but did not read. She was not told that the attorney would receive the $15,-800.00 fee, and did not realize it had happened until she went to the bank to deposit the check. Ms. Ruttley returned to Steiner’s office to ask him why her check was less; when Steiner replied that he did not work for free, she told him she did not want him to represent her any more.
On cross-examination, she stated that in connection with the insurance claim, she her *1098 self contacted the insurance company regularly, and was told that the policy was not in effect because the premium had not been paid. She agreed that she had received a letter from the insurance company dated February 28, 1986, returning her money order of February 19 for the $65.00 premium, and advising her that the policy had been cancelled. However, she says that (even though it said the policy was cancelled), this Isletter did not cause her to think there was any problem. Nevertheless, she showed the letter to Steiner.
Between February and July, they had no conversations about the denial of insurance coverage. She felt there was never a need to file the lawsuit because the insurance company would have eventually paid her. After she confronted Steiner about the $15,000.00 fee, she asked for her file, and Steiner told her she could not drop him. She was “not aware” of continuing to call or see Steiner after that; yet she agreed that in December of 1986, she attended a deposition in Houma with Steiner, driving there and back with him. She did not question the fee at that time. She admitted to lying during that deposition (relative to her relationship with another man at the time that her husband was killed), although she said she did so on Steiner’s advice.

TESTIMONY OF DAVID COLVIN, EXPERT

David Colvin, an attorney with 14 years experience in general practice and personal injury litigation, was qualified by the court as an expert in personal injury cases and contingency fee contracts. He testified that the contingency fee contract in question was a standard form, and that the fee of one-third is a normal or standard fee. As Colvin read the contract, it covered any claims arising out of the accident of January 11, 1986, including the personal injury claim; the wrongful death claim; the claim for property damage, if any; health insurance claims; and any life |6insurance claims that had to be made. His opinion was that the suit to enforce a contract for life insurance benefits would unquestionably be a suit for damages. However, we noted that the contract for the legal services here also states “against Chad Martin — Allstate or any and all others who shall be liable because of tort or contract on account of auto accident.”

TESTIMONY OF MS. CHEEKS

Ms. Phyllis Cheeks, Steiner’s secretary in 1985-1986 (at the time of trial she was no longer employed there) stated that plaintiff came into Steiner’s office within a week after her husband was killed, and was given the contingency fee contract to take home and examine. A few days later she came back and executed the contract in the office. Ms. Ruttley called or came by the office two to five times a week to check on her case. Within the first couple of weeks after the accident, plaintiff brought in correspondence regarding the life insurance policy with Inter-State for Steiner to examine. She called the office to inquire as to the progress of the claim, and when she was informed suit would have to be filed, she chose to have Steiner handle it on a contingency basis. After the settlement, plaintiff continued to be represented by Steiner since the office continued to handle the wrongful death claim. It was several months later when plaintiff discharged Steiner.
| ^TESTIMONY OF RICHARD STEINER
At trial, Steiner agreed that he did not have diaries or time records; however, he had reconstituted his file. He remembered that he sent plaintiff home with the contingency contract. There were a number of claims arising from Mr. Palermo’s death before the life insurance matter arose, and Ms. Ruttley consulted him regarding her rights as the beneficiary. On January 20, 1986, Steiner first sent a letter to Mr. Palermo’s former employer about the insurance. There were numerous conversations about the life insurance, and plaintiff brought in a money order in the amount of $65.00 to cover the premium. On February 4, 1986, Palermo’s former employer wrote to Steiner and sent a check representing a half month’s premium which had been deducted, but not applied to the policy. Several letters passed between Steiner and Inter-State, in which the company continued to deny coverage. Ms. Ruttley, *1099 who contacted or came into the office two or three times a week, was aware of the situation. Sometime in May of 1986, Steiner told her that they would have to file suit; they discussed the fee situation, since plaintiff had retained him once on a retainer basis, for the separation, and also once on the contingency basis for the wrongful death claims. Ms. Ruttley chose the contingency method.
After the settlement, Steiner had the settlement papers prepared and presented them to plaintiff to look over. She noted the charge for a fee:
And she said: Oh, you’re charging me a fee. And I said: Absolutely. And she said: but, you’ve got [ 8my death case. And I said: No, I’m sorry, we didn’t agree on that, I don’t work for people for nothing, because I have another case for you. That was about the end of that conversation.
Steiner said that Ms. Ruttley made no objection to the fee either at that or at any other time. Plaintiff continued as his client on the wrongful death claim, attending a deposition and continuing to contact the office on a regular basis. Steiner denied telling plaintiff to lie in the deposition.
Six months after the settlement on the insurance claim on the wrongful death case, she asked for her file back, at which time Steiner told her he would send it to her new attorney. Steiner received no fee on the death ease, but was only reimbursed his costs. He was unaware of any problem with the fee until Ms. Ruttley wrote the Louisiana Bar Association in November of 1988. Steiner said he also handled another matter involving medical payments for plaintiff, for which he did not charge her nor was he ever paid.
Regarding his work on the life insurance claim, Steiner testified that he did extensive research on whether a claim existed, since Mr. Palermo was killed only two weeks after the policy had been taken. At the point the suit was filed, Steiner knew a premium on the policy had never been paid so there was an issue as to whether the policy had been taken without consideration, giving the company the right to cancel.
Among the exhibits at trial were letters sent to plaintiff at her home from InterState; one, dated February 6, notified her that a premium was |9due on the policy by February 25. A letter sent by Steiner’s office with a money order for $65.00 for the premium was dated February 19, 1986. A copy of the money order made by plaintiff and dated February 19 was also admitted, along with a copy of Ms. Ruttley’s check dated February 14 to Inter-State for $26.00 (apparently a premium due on her insurance policy taken out by Mr. Palermo). Additionally, Steiner introduced a copy of a letter written to the Louisiana Bar Association by plaintiff relative to the fee complaint, along with a letter from the Bar Association advising Steiner that there was insufficient evidence to warrant further involvement by the committee and “based upon, but not limited to your reply, this file is today being closed.”
Additional evidence offered were copies of several letters written by Steiner to InterState in pursuit of the insurance claim, and a proffered copy of Steiner’s reconstituted file.

TRIAL COURT JUDGMENT

In dismissing plaintiff’s case, the trial judge found, as evidenced in his reasons for judgment, that Ms. Ruttley chose the contingency fee contract when initiating the proceedings to collect life insurance, and authorized Steiner to proceed under the contract already in existence. Further, it found that plaintiff had not objected to the fee and continued to be represented by defendant in the death claim. In addition, it is obvious that the trial judge | mdid not place any credibility in plaintiffs testimony as he stated in his reasons for judgment that she was “unworthy of belief.”
... most of all, the testimony of plaintiff defeats her claims and assertions. Her demeanor, hesitations and contradictions in testimony, both at trial and in deposition, left her unworthy of belief. Further, she continued for one half of a year to use defendant’s services as her attorney without complaint.
Finally, the court found the contingent fee contract was proper, ethical, and fair.
*1100 A 33⅝% contingent fee is the usual fee charged by Louisiana attorneys. Such a contract is not against public policy. The fee was fair and fully earned.
Ms. Ruttley’s motion for new trial, in addition to alleging the judgment to be contrary to the law and the evidence, centered on the issue of whether the court failed to apply the applicable law concerning review to determine whether legal fees are excessive. After hearing the motion, the court denied a new trial, the court maintained its previous findings, adding that plaintiffs choice to proceed on a contingent basis was fully informed. The court continued:
Plaintiff now complains that the fee would have been a great deal less on an hourly fee basis. For this reason, she seeks to set aside the contingent fee earned by Steiner. Her reason for this position is that the insurance company decided to pay the proceeds when confronted with the lawsuit.
The result reached in the action filed by Steiner occurs frequently in lawsuits. An injured plaintiff | nhires an attorney on a contingent fee basis, suit is filed, and the insurance company puts up policy limits. This does not, and should not, void the contingent fee contract. If settlement in full after the filing of suit would allow the client to void the contract, this could, and in some cases would, discourage settlement. Further, such a result would allow the client to choose the best of both worlds; if successful, client pays on an hourly basis, if unsuccessful, the client owes nothing under the contingent fee contract.
Incidentally, from the little testimony which the Court heard on the insurance controversy, the Court feels that the chance of success in the suit was considerably less than 50/50. Mr. Steiner did a great service for [sic] client.

ASSIGNMENT OF ERROR

Plaintiff complains that it was error for the court to enforce a one-third contingency fee contract for damages for wrongful death in the insurance contract matter; and further, that the trial court failed to evaluate the reasonableness of the fee.

ANALYSIS

In determining and fixing the attorney’s fees as a part of the reasonable and necessary costs of recovery, the court must adhere to the Code of Professional Responsibility, and may consider but is not bound by the attorney-client contract. To qualify as a reasonable and necessary cost of recovery, the fee must relate to necessary services which actually benefited or augmented recovery from the third person, rather than duplicative services or those designed to benefit a single party such as the mere monitoring of proceedings. Taylor v. Production Services Inc. of Mississippi, 600 So.2d 63 (La.1992).
112 ... our jurisprudence in Ethridge v. Merchants Trust and Savings Bank, 389 So.2d 865 (La.App. 4th Cir.1980) provides that the testimony of the attorney claiming fees plus general corroborating circumstances are enough to prove that a contingency fee contract exists between the parties.
An attorney’s fee is subject to court review and control and, therefore, this Court may inquire into its reasonableness. Boutall v. Vickers, 532 So.2d 928, 931 (La.App. 5th Cir.1988). In evaluating the reasonableness of attorney fees, even when stipulated in contracts, the applicable law is Disciplinary Rule 2-106 of the Code of Professional Responsibility. Walker v. Inv. Properties, Ltd., 507 So.2d 850, 852 (La.App. 5th Cir.1987), writ denied, 513 So.2d 293 (La.1987).
Tschirn v. Tschirn, 570 So.2d 204 (La.App. 5 Cir.1990)
The Rules of Professional Conduct have incorporated and replaced the former Code of Professional Responsibility. The articles of incorporation of the Louisiana State Bar Association, Rules of Professional Conduct read in pertinent part:
Rule 1.5. Fees
(a) A lawyer’s fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
*1101 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
| i3(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(c) A fee may be contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited by Paragraph
(d)or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
| ^The applicable standard of review was set forth by the Louisiana Supreme Court in Ambrose v. New Orleans Police Department Ambulance Service, 93-309, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216:
In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), this Court held that the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. A proper review, therefore, cannot be “completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record established that the finding is not clearly wrong.” Id. at 1333. More recently, regarding this constitutional appellate review of fact in civil cases, La. Const. Art. 5, Sec. 10, we have had occasion to say in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), a case which involved the review of damages, that “the discretion vested in the trier of fact is ‘great,’ and even vast,” and in Stobart v. State, 617 So.2d 880, 882-83 (La.1993), which involved the standard of review of findings of fact, a “court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ ” and “where two permissible views of the evidence exists, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. In each of these cases there was but a perpetuation of the principle set down in Arceneaux.
Notwithstanding the Court’s earlier guidance to reviewing courts in Stobart v. State through DOTD, 617 So.2d 880 (La.1993), it was not our purpose in that case to mandate that the trial court’s factual determinations cannot ever, or hardly ever, be upset. Although deference to the fact-finder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. [Louisiana Constitution of 1974, article 5, See. 5(C) and 10(D) ] Of course, the reviewing court may not merely decide if it would 115have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter’s judgment is not clearly wrong or *1102 manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support.
Ambrose, supra, at pp. 220-21.
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, supra.
With regard to the credibility determination of the trial judge (as mentioned above) under the above cited jurisprudence, our review of the record compels us to conclude that such determination was quite reasonable — as indicated hereinabove, plaintiffs testimony was inconsistent and contradictory and was also contradicted by the documents introduced at trial. (For example, it is clear that plaintiff began to pursue the life insurance claim much earlier than she testified, almost immediately after | usMr. Palermo died). The admission of plaintiff that she had previously lied under oath also mitigates heavily in favor of the finding of the trial court. The resulting inference of fact, that plaintiff had agreed to the contingency contract, was consequently also a sound one. The testimony of both defendant and Ms. Cheeks are in contrast to that of the plaintiff regarding several issues; however, even Ms. Ruttley agreed that she took the fee contract home to study before signing it, and so she had adequate opportunity to examine it prior to assenting to it. She could also have had it examined by another attorney or a person knowledgeable in contracts.
As the jurisprudence mandates, the determination of fairness and reasonableness of an attorney fee is ultimately a question for the courts. While the trial court did not engage in a protracted inquiry, it is obvious that such a review was made. In reviewing this conclusion and applying the factors of Rule 1.5, we note that Mr. Colvin, who was qualified as an expert, stated that the fee charged was fair and reasonable under the standards of Louisiana practitioners, and that in his opinion, it included the life insurance claim. Our examination of the agreement in question also compels us to conclude that the contract encompasses such claims as the one at issue, and we see no manifest error in this finding. It is not clear from the record how much time and labor was involved, although we take note of the research to which defendant testified (as well as the correspondence), inj^which he was involved and the time obviously spent on the ease with Ms. Ruttley prior to the final decision to file suit. Further, we note the trial judge’s assessment that the chance of success in the lawsuit was less than 50/50 and, therefore, the skill of the attorney, who successfully handled the difficult matter, must be deemed to be considerable. Clearly, the results obtained, which was a settlement for the full policy limits plus expenses, was the most favorable possible outcome. In addition, the experience, ability and reputation of defendant has not been attacked nor challenged in these proceedings.
We are favorably impressed, although not persuaded nor influenced by the dismissal of this claim by the Louisiana Bar Association. We note, too, that defendant performed other services for the defendant for which he was not and has never been compensated.
Considering the record as a whole, we find no manifest error in the assessment of credibility of the trial court nor in its judgment that the fee in question was fairly and fully earned.

DECREE

For the foregoing reasons, the judgment is affirmed. Plaintiff is assessed all costs of appeal.
AFFIRMED.