FREDERICKA HOMBERG WICKER, Judge.
| ¡/David Ocmand, doing business as River Parish Industrial Repair (the roofing company, collectively referred to herein as Mr. Ocmand) seeks judgment against the defendants, Christopher R. Lubrano and Danielle R. Lubrano (the homeowners) for the balance due for services rendered under an agreement with the homeowners to replace the roof. Mr. Ocmand appeals the judgment dismissing his suit with prejudice and denying attorney’s fees. He asserts he is entitled to the full contract price, including attorney’s fees, and specifies the following errors: (1) The Lubranos waived any defenses in a settlement agreement and the trial judge erroneously failed to enforce that agreement. (2) The trial court erred in offsetting and/or giving the Lubranos a credit for compromised damages. (3) The trial court erred in failing to find Mr. Ocmand tendered performance and that tender constituted proper performance. (4) The trial court erred in refusing to award attorney’s fees. For the reasons that follow, we affirm.
| ^Procedural History/Facts
On February 27, 2007, Mr. Ocmand provided the Lubranos with a written proposal of $11,800.00 for materials and labor as the cost to replace the Lubranos’ roof on their home and adjacent garage. A few days later, Mr. Lubrano paid $6,000, of which Mr. Ocmand spent $5083.77 for materials.[1] Mr. Ocmand and his five workers worked on the house and garage roofs for seven days. According to Mr. Lubrano, things did not go well from the beginning. Mr. Lubrano testified that as early as the first day, he told the workers to stop because the nails were tearing or puncturing the shingles. He also complained about the amount of shingle overhanging the drip edge on the garage. He testified that Mr. Ocmand was not there and the workers refused to stop working. Mr. Ocmand stated that he was probably only there four to five hours because he had to obtain materials.
Mr. Lubrano and Mr. Ocmand testified that on the second day, the workers had to work at night in order to cover the house roof with black paper (the underlayment) to prevent exposure to the rain. Mr. Oc-mand stated that the workers had not followed his instructions. Instead, they tore off more shingles than planned.
According to Mr. Lubrano, as a result, the workers had to install the underlayment on approximately 25% of the roof area. Concerned that the men were working in the dark and could not see, Mr. Lubrano told the workers to stop working. They ignored him.
*786 Mr. Ocmand admitted that Mr. Lubrano often complained about problems. He stated that Mr. Lubrano complained to him about a bent drip edge that was caused by a ladder placed there, the length of the overhang of the shingles on the garage roof that went over the drip edge, problems with the hips and the manner in |4which they were cut, concern about the proper number of nails per shingle, and concern that workers were cutting the un-derlayment.
According to Mr. Ocmand, one concern, the bent drip edge, could be easily remedied. Another problem, which Mr. Ocmand admitted occurred, was that the shingles on the two longer sides of the garage roof were extended longer than the amount called for in the manufacturer’s guidelines. Mr. Ocmand stated that he never addressed that issue because it required two to three and half hours of work and at the time, Mr. Ocmand was focused on completing the house roof.
As for Mr. Lubrano’s concern that the workers were not using the required number of nails per shingle, Mr. Ocmand testified that the workers assured him that they were using the proper number. Although he did not review their work at that point, he was satisfied with their assurance.
Mr. Lubrano testified that because of the unsatisfactory work, he asked Mr. Oc-mand to leave the job on two occasions. The first time occurred on the second day after Mr. Ocmand finally arrived. That night Mr. Ocmand assured him he would remove the shingles to fix the problem. With that assurance, Mr. Lubrano allowed Mr. Ocmand to return the following day. It is undisputed, however, that upon return Mr. Ocmand did not address Mr. Lubrano’s concerns.
According to Mr. Ocmand, he focused on completing the job and intended to perform remedial work after completion. Then, according to Mr. Ocmand, when, on the seventh day Mr. Lubrano finally ordered Mr. Ocmand off the job site, the project was 95% complete. The remainder consisted of finish work, capping, replacing missing shingles in an area of the roof that they were using as access, and fixing the bent drip edge. But, Mr. Ocmand was not given the opportunity to perform remedial work.
| sWilliam Pousson, an expert in building codes as it relates to roofing, inspected the house and garage roof on April 4, 2007 according to the mandatory 2007 state code. Mr. Pousson found the following code violations: (1) The shingles in several areas were only applied with four nails per shingle and not the required six.[2] (2) The code, which required adhering to the manufacturer’s recommendations, was not followed with respect to the installation of the underlayment. (3) The exposure on the rows of shingles was inconsistent.
After Mr. Ocmand filed suit for the alleged balance due under the agreement, the Lubranos filed an answer denying that the roof was substantially completed. They also filed a reconventional demand seeking damages, including mental anguish and inconvenience, for alleged defective workmanship. The Lubranos dismissed their reconventional demand after they settled their demand.
After the settlement, Mr. Ocmand amended his petition, seeking among other things, attorney’s fees. He alleged that the Lubranos’ failure to pay the full con *787 tract amount amounted to intentional fraud because the settlement waived any defense to Mr. Ocmand’s demand. The trial judge found the settlement only waived the Lubranos’ right to offset their damages against the contract price; it did not waive their defense that the work was performed in an unworkmanlike manner. He found that Mr. Ocmand did not substantially complete the work, having performed only 13.5% of all the work that he was obligated to perform under the roofing contract. Therefore, the trial judge awarded Mr. Ocmand $906.70, subject to any credit the Lubranos were entitled to for any payments they had made to Mr. Ocmand. He also denied attorney’s fees. Thus, the Lubranos had a $916.23 credit (based on the $6,000 payment to Mr. Oc-mand) toward the labor cost, which | ^covered the trial court’s award. The trial judge then rendered judgment dismissing Mr. Ocmand’s suit with prejudice. This appeal followed.

Analysis

Tender

In his testimony, Mr. Ocmand basically stated that the Lubranos did not permit him to correct his work and that he tendered performance but the Lubranos refused the tender. In addition to verbally offering to remedy the work, Mr. Oc-mand testified that he sent a certified letter to the Lubranos stating that he was willing to correct any defects in the work. Although Mr. Lubrano believed he received such a letter, he did not recall its contents.
Mr. Ocmand asserts that through his actions, he, Mr. Ocmand, tendered his performance and that tender had the full effect of performance. Thus, he asserts that the Lubranos owe him the full contract price of $11,800 subject to a credit of $6,000, leaving a $5,800 balance.
To support his argument, Mr. Ocmand relies on Walker v. Investment Properties, Ltd., 507 So.2d 850, 852 (La.App. 5 Cir.1987), writ denied, 513 So.2d 293 (La.1987). That ease is distinguishable. Walker concerned a tender of a certified check rather than a tender of services as is the case here. 507 So.2d at 853. The court held that the tender was valid and sufficient to satisfy all obligations owing and therefore produced all of the effects of performance. Id.
Walker relied on La.C.C. Art. 1869, which provides:
When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.
A valid tender is an offer to perform according to the nature of the obligation.
|7Article 1869 requires the tender to be followed by a deposit to the order of court. The present case concerns a suit on a contract to replace a roof, a contract for services. However, services, although they can be tendered, cannot be deposited. La.C.C. art. 1869, 1984 revision comment b. In fact, the effects of the common law tender of services are accomplished under Louisiana law by putting in default. In French doctrine, the mechanism of tender and deposit for extinguishing obligations was meant to be confined to obligations to give. Id.
Even assuming the certified letter constituted a tender (and placement in default) despite no deposit to the order of court, Article 1869 requires another condition in order to produce the effects of performance: refusal to accept the tendered performance without justification. *788 Here, we find the record supports the trial judge’s conclusion that the Lubranos were justified in failing to accept Mr. Ocmand’s performance. Mr. Lubrano gave Mr. Oc-mand numerous chances to correct his work before ordering him off the property. The absence of the requisite nails per shingle alone supported the conclusion that the work was not substantially complete and had to be redone. Therefore, the trial judge did not err in failing to find there was a tender which was the same as performance.

The settlement agreement and offset

The settlement agreement and receipt and release entered into between the Lubranos and Mr. Ocmand’s insurance company was admitted into evidence, despite the Lubranos’ objection.
Nevertheless, in a judge alone trial, inadmissible evidence may be admitted, where, by virtue of his training in the law, the judge is able to disregard irrelevant matters which are possibly prejudicial. State v. Johnson, 496 So.2d 616, 622 (La.App. 1 Cir.1986), writ denied, 501 So.2d 206 (La.1987) (citations omitted).
|sMr. Ocmand argues that the settlement agreement stops the Lubranos from raising an affirmative defense because they gave up all “rights” to raise affirmative defenses regarding the roof work and other repairs that Mr. Ocmand performed. Whether he did or did not perform shoddy work in an unworkmanlike manner, Mr. Ocmand argues that the Lubranos’ damages are still zero, being fully settled. Mr. Ocmand asks that this Court award him the entire contract price less the amount already paid by the Lubranos for a sum of $5,800.
A compromise instrument is the law between the parties and must be interpreted according to the intent of the parties to the agreement. The compromise instrument is governed by the same general rules of construction applicable to contracts. Ortego v. State, Dept. of Transp. and Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. The general rule of construction is provided by La.C.C. art. 2046, which states that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” Trahan v. Coca Cola Bottling Co. United, Inc., 04-0100, pp. 14-15 (La.3/2/05), 894 So.2d 1096, 1106-07 (quoting La.C.C. art. 2046). A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La.C.C. art. 3076.
In applying the rule of construction set forth in La.C.C. art. 3076 (formerly La. C.C. art. 3073), courts are guided by the general principle that the contract must be construed as a whole and in light of attending events and circumstances. Hudson v. Progressive Sec. Ins. Co., 43,857 (La.App. 2 Cir. 12/10/08), 1 So.3d 627, writ denied, 09-0235 (La.3/27/09), 5 So.3d 148 citing Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748.
[sMr. Ocmand relies on two portions of the settlement agreement.
First, the settlement agreement specifically provides that the Lubranos release and forever discharge Mr. Ocmand “from any and all ... rights, damages ... to which they may be entitled, in any way resulting from and/or to result from roofing and/or other work or repairs performed by DAVID OCMANDf.]”
That provision does not specify that the Lubranos are stipulating that insofar as the main demand, they agree not to assert any defenses nor do they amend their answer to the main demand wherein they denied that Mr. Ocmand completed the *789 work. Construed as a whole and in light of attending events and circumstances that settlement clearly reflects the parties’ intent was to settle the reconventional demand rather than the main demand. It is clear that the parties’ intent was that the provision referred to the reconventional demand and their rights to the damages they claimed in reconvention. In light of the attending circumstance of dismissal of the reconventional demand rather than a dismissal or amendment of their answer denying substantial completion, the settlement is a settlement of the reconventional demand.
Second, Mr. Ocmand asserts that the settlement prohibits the Lubranos from receiving any credit due to damages caused by Mr. Ocmand. Ocmand thus argues that the trial judge allowed Mr. Oc-mand’s recovery to be reduced by giving the Lubranos a credit for alleged unwork-manlike performance. The trial judge was clear, however, at trial that he would not allow such an offset. Nevertheless, he would allow testimony and evidence about the workmanship. The trial judge reasoned that in order for Mr. Ocmand to recover he must show that he properly performed the work under the contract.
The settlement specifically states that the fact and details of the settlement shall not be presented or introduced as an admission of fault, defective | ,0workmanship or liability in the main demand nor shall the amount paid to the Lubranos (that is, the $16,000 settlement) be claimed as a credit or offset against any damages east in the main demand.
In essence, the settlement only pertains to the Lubranos’ reconventional demand. It is not a settlement as to the main demand. Moreover, the trial judge never allowed an offset of the settlement award against the amount he awarded Mr. Oc-mand. Rather, he applied a credit of the amount the Lubranos paid to Mr. Ocmand in the $6,000 check for the roofing labor and materials.
Thus, we find no merit to these specifications of error.

Substantial Completion

Mr. Ocmand argues he is entitled to the full contract price, despite the fact that the trial Court found the roofing job performed by the plaintiff to be defective. We disagree. Mr. Ocmand also argues that in the event there were no damages, then Mr. Ocmand should have received the full contract price. The trial judge, however, found that Mr. Ocmand did not substantially complete the job:
[I]t is important to note the court is aware that Mr. Lubrano is not an expert in roofing and as such, he is not qualified to render an expert opinion as to the deficiencies in Ocmand’s installation of the new roof. However, the pictures alone of the roof in question reflect problems with the quality of Mr. Oc-mand’s work that are so obvious, even to a lay person, such that an expert opinion, although there was one in this case, was not even necessary. This court finds as a matter of fact that Ocmand did not perform his work in a good and workmanlike manner so that the work was free from defects in material and workmanship. The court does find that Ocmand’s removal of the preexisting roof and installation of the felt paper/un-derlayment for the new roof was done in a workmanlike manner , such that it was free from defects in workmanship. It is the court’s opinion the aforementioned only reflects about thirteen and a half percent (13.5%) of all the work that Oc- . mand d/b/a River Parish was obligated to do under the roofing contract. As such, the court will award Ocmand thirteen and a half percent (13.5%) of the amount due under the labor portion of *790 the contract’, or $906.70, subject to any credit for which the Lubranos are entitled to for any payments that have already been made to Ocmand.
_|_yThe trial judge also found that Mr. Ocmand did not perform his work in a good and workmanlike manner so that the work was free from defects in material and workmanship. However, the court found that Mr. Ocmand’s removal of the preexisting roof and installation of the felt paper/underlayment for the new roof was done in a workmanlike manner such that it was free from defects in workmanship. That portion only reflected about thirteen and a half percent (13.5%) of all the work that Mr. Ocmand was obligated to perform under the roofing contract.
The trial judge evidently found that it was necessary that the roof be rebuilt as a result of the unworkmanlike manner in which the job was performed. The record, including the photographs of the roofing work, supports the trial judge’s finding that Mr. Ocmand did not substantially perform the roofing contract so that it was necessary to have a significant portion redone.
The contractor has the burden of proving substantial compliance with the contract. Jackson v. Spurlock, 424 So.2d 1088, 1089 (La.App. 1 Cir.1982). When a contractor fails to prove that he has substantially performed, he may, in the alternative, prove the value of the services he has rendered and thereby recover based on quantum meruit. Id.
Because there was no substantial performance of the contract, Mr. Ocmand breached the contract and was not entitled to the full contract price under the contract. Town & County Contractors v. Henderson, 231 La. 131, 90 So.2d 863, 865 (La.1956).
However, the trial judge awarded Mr. Ocmand an amount for the work that was partially completed. He found:
Despite the obvious problems with Oc-mand’s work, Mr. Lubrano was satisfied with the manner in which the preexisting shingles were removed and the installation of the new underlayment/felt paper. Mr. [12Lubrano further testified he needs a new roof to date, which will cost him approximately $15,000 according to the estimates that he received.
The trial judge’s award was based on the principle of quantum meruit. We find no manifest error in the trial judge’s failure to award the full contract price.
Attorney’s Fees[3]
Mr. Ocmand sought attorney’s fees based on La.C.C. art. 1997, which the trial judge denied. La.C.C. art. 1997 provides:
An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.
*791 Mr. Ocmand asserts that the Lubranos were in bad faith because they raised a defense to his claim when the Lubranos had already settled that claim for poor work. According to Mr. Ocmand, the Lu-branos refused to pay his bill even though they had no defense.
Louisiana courts have long held that attorney’s fees are not allowed except where authorized by statute or contract. Sher v. Lafayette Ins. Co., 07-2441, p. 18 (La.4/8/08), 988 So.2d 186, 201. Article 1997 does not mention attorney’s fees. In cases of breach of contract, Article 1997 does not provide for an award of attorney’s fees. Id. As discussed above, we find that the trial judge was not manifestly erroneous in finding that the Lubranos were not in bad faith to pursue a defense. But even so, the trial court did not err in refusing to award attorney’s fees under Article 1997.

11SConclusion

For the reasons stated, the judgment is affirmed.

AFFIRMED

. It is undisputed that the Lubranos paid Mr. Ocmand $6,000 for materials. Mr. Ocmand introduced into evidence receipts for materials totaling as $5,083.77.

. Mr. Ocmand testified that the code required six nails per shingle for a high wind roof such as this.

. The Lubranos assert that Mr. Ocmand did not list the denial of his claim for attorney's fees as an assignment of error. "An assignment of errors is not necessary in any appeal.” La.C.C.P. art. 2129. However, Uniform Rules — Courts of Appeal, Rule 1-3 states: "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.” We need not resolve any potential conflict between the Uniform Rules and the Code of Civil Procedure because the interest of justice clearly requires consideration of the issue. Mr. Ocmand has nevertheless otherwise raised and briefed the issue. Assignments of error neither briefed nor argued are considered abandoned. State v. Lewis, 416 So.2d 921, 923, n. 1 (La.1982); Uniform Rules — Courts of Appeal, Rule 2-12.4. Thus, we do not consider the assigned error abandoned because the issue is clearly before this Court.